In the

# United States Court of Appeals
## For the Seventh Circuit
_____

Nos. 18-1740 & 18-1791

MICHAEL ALONSO, individually and derivatively on behalf of
NUTMEG/MERCURY FUND, LLP (hereinafter within this caption
MERCURY FUND, LLP), *et al.*,

*Plaintiffs-Appellants*,

*and*

RANDALL S. GOULDING,

*Plaintiff-Appellant*,

*v.*

LESLIE J. WEISS and BARNES & THORNBURG,

*Defendants-Appellees*.

_____

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:12-cv-7373 — **Joan Humphrey Lefkow**, *Judge*.

_____

ARGUED APRIL 11, 2019 — DECIDED AUGUST 6, 2019

_____

Before SYKES, SCUDDER, and ST. EVE, *Circuit Judges*.

SCUDDER, *Circuit Judge*. This appeal centers on the performance of the court-appointed receiver of financial advisory firm Nutmeg Group, LLC. The district court appointed the receiver after the Securities and Exchange Commission initiated an enforcement action against Nutmeg and its managing member, Randall Goulding. Against the Commission's allegations of ongoing fraud and misappropriation of client assets, the district court presiding over the SEC matter entered a temporary restraining order prohibiting Goulding from operating Nutmeg and appointed a receiver to oversee all aspects of the firm's business.

This civil suit followed. Goulding and a group of limited partners in one or more of the Nutmeg funds alleged that the receiver breached her fiduciary duties and, in doing so, reduced the value of the funds' assets. After dismissing certain counts, the district court entered summary judgment in the receiver's favor on all remaining claims. Because we agree that no reasonable jury could find that the receiver engaged in a willful, deliberate, or even grossly negligent breach of a fiduciary duty, we affirm.

**I**

A

Nutmeg Group, LLC, formerly managed by Randall Goulding, served as an investment advisor and sole general partner of more than a dozen investment funds, which we will refer to collectively as the Funds. Each of the constituent funds is a limited partnership under Illinois or Minnesota law. With Goulding at the helm, Nutmeg executed transactions on behalf of the Funds and oversaw their investment strategies. Goulding's management of the Funds ended in

2009, when the SEC brought an enforcement action against him, Nutmeg, and others in the Northern District of Illinois, alleging violations of the Investment Advisors Act of 1940. The thrust of the Commission's complaint was that Nutmeg misappropriated client assets and failed to maintain proper records. See *SEC v. Nutmeg Grp., LLC*, No. 09 C 1775, 2011 WL 5042094 (N.D. Ill. Oct. 19, 2011).

The district court handling the SEC action found that the Commission made the showing necessary to warrant the issuance of a restraining order prohibiting Goulding from managing the Funds. The court also granted the SEC's unopposed motion to appoint attorney Leslie Weiss as receiver for Nutmeg. The appointment order granted Weiss the authority to "oversee all aspects of Nutmeg's operations and business," including "serving as general partner and investment advisor" to the Funds. It also provided that, as receiver, Weiss was "solely the agent of [the] [c]ourt," and should continue Nutmeg's business "in such manner, to such extent, and for such duration as [she] may in the exercise of her business judgment and in good faith deem to be necessary or appropriate." The order directed Weiss to file regular status reports with the district court detailing her acts as receiver.

The appointment order separately addressed Weiss's liability, broadly providing that Weiss and any professionals she retained would not be held liable to anyone "for their own good faith compliance with any order, rule, law, judgment, or decree." The order added that neither Weiss nor any retained personnel would be held liable "with respect to the performance of their duties and responsibilities as Receiver and Retained Personnel . . . except upon a finding by [the district] [c]ourt that they acted or failed to act as a result of

malfeasance, bad faith, gross negligence or in reckless disregard of their duties."

B

Following her appointment, Weiss submitted the required status reports to the district court. In her first report, she broadly shared the results of her initial due diligence. She informed the court of her review of the Funds' assets, which included convertible notes (many of which were in default); lawsuits or judgments against borrowers who had defaulted on their notes or refused to convert notes to stocks; and "shells" of failed borrower companies that Nutmeg or the Funds had recovered when the companies defaulted on their debt. Weiss also reported on her efforts to assess the collectability of any outstanding judgments, while also conveying her concern that some of the notes' issuers were not financially stable. In time Weiss submitted additional reports informing the district court of particular developments and challenges she was encountering as well as decisions she was making as receiver.

To further fulfill her duties, Weiss sought assistance from investment advisors and attorneys. For example, in addition to retaining Barnes & Thornburg, the law firm where she is a partner, Weiss hired McClendon, Morrison & Partners, LLC as an investment advisor. She also consulted with a collection firm regarding the collectability of certain judgments against borrowers who had defaulted on their notes.

Unsatisfied with Weiss's performance as receiver, Goulding and a group of limited partners from certain funds managed by Nutmeg filed an individual and derivative action on behalf of the Funds. The complaint named as defendants

Weiss, Barnes & Thornburg, Nutmeg, and the Funds, and alleged state-law claims for breach of fiduciary duty and legal malpractice. Specifically, the plaintiffs alleged that Weiss breached her fiduciary duties as receiver, including under Illinois's and Minnesota's partnership statutes, by failing to pursue certain opportunities to the detriment of one or more of the Funds and, separately, by not converting certain debt owed to Nutmeg or a particular fund into stock to be sold on the open market. The plaintiffs also brought a federal claim pursuant to the Investment Advisors Act of 1940 and SEC Rule 206(4)-2.

For their part, Weiss and Barnes & Thornburg filed a motion to dismiss, which the district court granted in part. The court dismissed the plaintiffs' federal securities law claim as well as several other counts in an amended complaint, including all claims against Nutmeg, all legal malpractice claims against Weiss and Barnes & Thornburg, and two breach of fiduciary duty claims against Weiss. These dismissals are not at issue on appeal.

Weiss and Barnes & Thornburg then successfully moved for summary judgment on the remaining seventeen counts. In a detailed and thorough opinion, the district court assessed each of the plaintiffs' allegations, concluding that even when viewed in the light most favorable to the plaintiffs, no reasonable jury could find that either Weiss or Barnes & Thornburg willfully and deliberately violated any fiduciary duties. On appeal the plaintiffs challenge the district court's ruling on select claims advanced against Weiss.

**II**

A

We begin with a brief word on our appellate jurisdiction. We do so because the plaintiffs' amended complaint named not only Weiss and Barnes & Thornburg as defendants, but also Nutmeg and the Funds. The district court's final judgment did not address the Funds, however.

We nonetheless agree with the parties that the district court's judgment constituted a final and appealable judgment under 28 U.S.C. § 1291. First, although the amended complaint named 13 separate funds as defendants, the plaintiffs did not assert any claims against these entities or seek any relief from them. More to it, the summary judgment order, by its terms, expressly resolved all claims in the district court. See *Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 666 (7th Cir. 1986) (explaining that "a decision is final for the purpose of § 1291 if it ends the litigation on the merits and leaves nothing for the district court to do but execute the judgment"). In these circumstances, our appellate jurisdiction is secure.

And this is so despite ongoing proceedings in the district court in the underlying SEC enforcement action. The docket shows that the parties consented to a bench trial before a magistrate judge in January 2018. They are awaiting a decision. We have no reason to believe any outcome of the bench trial will affect this appeal, however.

B

We turn next to the standard of liability governing the plaintiffs' state-law claims for breach of fiduciary duty. The plaintiffs assert that Minnesota and Illinois law apply because each of the funds is either a Minnesota or Illinois limited partnership. With both states having adopted the Uniform Limited Partnership Act—and the plaintiffs not identifying any conflict in the states' respective interpretations of the Act—our analysis proceeds by applying Illinois law. We would reach the same conclusions under Minnesota law.

To recover for a breach of fiduciary duty, Illinois law required the plaintiffs to establish the existence of a fiduciary duty, a breach of that duty, and damages proximately caused by the breach. See *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 709 (7th Cir. 2010). On this much the parties agree. From there, however, they dispute the substantive standard to which Weiss should be held when assessing whether she breached her fiduciary duties as receiver.

The district court relied on our 1985 decision in *In re Chicago Pacific Corp.* and determined that, to hold a court-appointed receiver personally liable, the plaintiffs must show that Weiss engaged in a "willful and deliberate" violation of her fiduciary duties. 773 F.2d 909, 915 (7th Cir. 1985) (citing *Mosser v. Darrow*, 341 U.S. 267, 272 (1951) and *Sherr v. Winkler*, 552 F.2d 1367, 1375 (10th Cir. 1977)). In this way, the district court effectively saw the Illinois *state-law* standard of liability as mirroring the *federal* willful and deliberate standard announced by the Supreme Court in the bankruptcy context in *Mosser v. Darrow*, see 341 U.S. at 272, which we, in turn, have applied in cases involving alleged breaches of duty by bankruptcy trustees. See, *e.g.*, *Grochocinski v. Mayer Brown Rowe &*

*Maw, LLP*, 719 F.3d 785, 800 (7th Cir. 2013); *In re Chicago Pac. Corp.*, 773 F.2d at 915.

The plaintiffs contend that the federal benchmark sets the liability bar too high. By their measure, the lesser gross negligence standard that the Illinois legislature made applicable to the acts of all general partners reflects the proper rule of decision. See 805 ILCS 215/408(c); see also Minn. Stat. § 321.0408(c). This is especially so, the plaintiffs urge, because the district court order appointing Weiss as receiver expressly stated that she could be held liable upon a showing of gross negligence.

The plaintiffs have some, but not all, of the analysis right. They are right, of course, that they brought claims under Illinois (and Minnesota) law. They are equally right, as a matter of subject matter jurisdiction, that the doctrine of ancillary jurisdiction permitted them to bring these claims against Weiss, a federally-appointed receiver, in the same federal court presiding over the SEC action, here, the Northern District of Illinois. See, *e.g.*, *Robinson v. Michigan Consolidated Gas Co. Inc.*, 918 F.2d 579, 586 (6th Cir. 1990) (quoting C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2985 at 45) ("It is well settled that 'actions against a receiver arising out of his conduct of the receivership business may be brought in the appointing court even though there may not be any independent grounds for asserting federal jurisdiction.'").

This case presents a slight wrinkle. Ordinarily in the receivership context, the exercise of ancillary jurisdiction would entail the same district judge responsible for the SEC matter (here, Judge Coleman) also hearing any claims asserted against a court-appointed receiver. Here the record shows that the plaintiffs sought permission to file claims against the

receiver and her appointed counsel in the Northern District of Illinois and Judge Coleman appropriately authorized the request. But a different judge, Judge Lefkow, ultimately handled the plaintiffs' ancillary claims. We can view all of this as reasonably occurring as part of the Northern District's case management following the death of Judge Hibbler, the district judge who had presided over the SEC enforcement action since its inception. In these circumstances, we agree with the plaintiffs that the district court properly exercised ancillary jurisdiction over the claims challenging Weiss's performance as a court-appointed receiver. For her part, Weiss too agrees that the district court had subject matter jurisdiction over the plaintiffs' claims.

Turning to the claims themselves, we agree with the plaintiffs that state law, and not federal bankruptcy law or federal common law, supplies the controlling standard of fiduciary care. See 28 U.S.C. § 959(b) (stating that a court-appointed receiver "shall manage and operate the property in his possession as such trustee, receiver or manager according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof").

Where we part ways with the plaintiffs is in their insistence that Weiss had to abide by the ordinary gross negligence standard that both governs general partners under Illinois (and Minnesota) law and appears in the receivership appointment order. Put another way, the plaintiffs see Weiss as a general partner, albeit court-appointed, who should be held to the run-of-the-mill general partner standard of liability under Illinois law. If only the analysis was so straightforward.

As a threshold matter, it is far from clear that the district court, in appointing Weiss as receiver, made her the general partner of the Funds. The appointment order, to be sure, authorized Weiss to "oversee all aspects of Nutmeg's operations, which include, but are not limited to, serving as general partner and investment advisor" to the Funds. While this language makes plain that Weiss acquired the authority held in the ordinary course by a fund's general partner, this is not the same as making Weiss a general partner for any and all purposes, including for personal liability for a breach of a fiduciary duty such that ordinary state partnership statutes should apply.

This conclusion is underscored by the fact that the appointment of Weiss as receiver was far from an ordinary-course event—indeed, it came upon a finding by the district court that Nutmeg, as the sole general partner of the Funds, and Goulding, as Nutmeg's managing partner, had engaged in substantial malfeasance. What is more, the order appointing Weiss did not put her only in the former shoes of Nutmeg and Goulding. To the contrary, Weiss was appointed not as a fiduciary of any particular fund but instead "solely [as] the agent of th[e] Court in acting as Receiver," and charged with the broad responsibility of "tak[ing] such action necessary and appropriate to prevent the dissipation or concealment of any funds or assets constituting Receivership Property and otherwise preserve any such funds and assets."

To identify the proper rule or decision, we need to ask what standard of fiduciary care Illinois courts have adopted, not for ordinary general partners, but in the context of a court-appointed receiver. If Illinois caselaw does not supply the answer, the question becomes what standard the Illinois

Supreme Court would adopt if presented with the issue. See *In re Zimmer, NextGen Knee Implant Products Liab. Litig.*, 884 F.3d 746, 751 (7th Cir. 2018) (collecting authorities and explaining that a federal court's task in applying state law is to determine how the state's highest court would rule and, where a state's courts have yet to address the question, to examine the law in other jurisdictions to discern the probable direction of the state law at issue).

Our research has identified no Illinois case addressing the question. But that observation does not lead to a dead end. In predicting what standard of liability the Illinois Supreme Court would adopt, we have every reason to believe the court would see a court-appointed receiver as just that—as an individual serving not as an ordinary fiduciary or general partner, but instead at a federal court's direction to fulfill unique responsibilities. Here that would mean treating Weiss as a receiver appointed to oversee and to protect the assets of at least 13 limited partnerships in the wake of a federal district court finding substantial misconduct by Nutmeg and its former managing partner.

Informed by our decision in *Chicago Pacific Corp.*, we believe the Illinois Supreme Court would arrive at the willful and deliberate standard of personal liability for a court-appointed receiver. See 773 F.2d at 915. This heightened standard of liability roots itself in the Supreme Court's 1951 decision in *Mosser* and accounts for the context in which a receiver is operating. The standard recognizes that if a receiver is "burdened with having to defend against suits by litigants disappointed by his actions on the court's behalf, his work for the court will be impeded." *Matter of Linton*, 136 F.3d 544, 545 (7th Cir. 1998). So too does this standard reflect the reality that

receivers are often appointed to take charge of entities with which they have had no prior involvement: imposing personal liability for mistakes in business judgment could discourage competent individuals from acting as receivers. Given the clarity and reasons supporting this standard in our caselaw—developed, to be sure, in the analogous bankruptcy context—we conclude that the Illinois Supreme Court most likely would chart the same course as a matter of Illinois law.

The practical considerations warranting a heightened liability standard are far from fiction here. Take, for example, the observations the district court made in the underlying SEC matter. Judge Hibbler went out of his way to warn that "Goulding's obstinacy in the underlying litigation demonstrates an animosity towards the Receiver and provides further pause to be wary of any purported claim he might raise against the Receiver, particularly in the absence of even a scintilla of evidence that the Receiver acted in bad faith." *SEC v. Nutmeg Grp., LLC*, No. 09 C 1775, 2011 WL 5042092, at *4 (N.D. Ill. Oct. 19, 2011). In much the same vein, Judge Hibbler observed that "[t]o say that Goulding has been uncooperative with the Receiver is to understate his recalcitrance." *Id.*

In the end, we believe the Illinois Supreme Court would require a showing that Weiss willfully and deliberately violated her fiduciary duties before imposing judgment for personal liability. Under this standard, the plaintiffs must show that Weiss intentionally took actions she knew violated her fiduciary duties. See, *e.g., Petrovic v. Dep't of Employment Security*, 2016 IL 118562, ¶ 30–31 (defining "deliberate and willful" in the context of the Illinois Unemployment Insurance Act as "conscious act[s] made in violation of company rules, when the employee knows it is against the rules"); see also *Levy v.*

*Markal Sales Corp.*, 268 Ill. App. 3d 355, 380 (1st Dist. 1994) (finding a "willful breach of a fiduciary duty" based on evidence that corporate directors engaged in acts that were "lacking in good faith, underhanded, deceitful and sly").

Even if our prediction is mistaken, however, all agree that Illinois law, at the very least, would hold Weiss to a standard of gross negligence. See 805 ILCS 215/408(c). And the plaintiffs are quick to remind that this same gross negligence standard appears in the district court's order appointing Weiss as receiver in the first instance. Fair enough. It is certainly possible, especially as a matter of comity, that the Illinois Supreme Court would inform its identification and definition of the controlling liability standard by the standard appearing in the order appointing Weiss as receiver.

Under a gross negligence standard, the plaintiffs could not recover absent a showing that Weiss acted in her capacity as receiver with "reckless indifference to or deliberate disregard of" her duties or that her actions were "without the bounds of reason." *Sherman v. Ryan*, 392 Ill. App. 3d 712, 732 (1st Dist. 2009) (quoting *Benihana of Tokyo, Inc. v. Benihana, Inc.*, 891 A.2d 150, 192 (Del. Ch. 2005)).

We can stop short of staking out a more definitive position on the substantive liability standard, however. As our ensuing analysis shows, the district court properly determined that the record evidence required entry of summary judgment for Weiss. This is so, we conclude, whether we apply the heightened willful and deliberate standard or the lesser gross negligence standard.

**III**

The plaintiffs challenge the entry of summary judgment on sixteen distinct claims alleging that Weiss breached her fiduciary duties by failing to take certain actions like bringing lawsuits, enforcing notes, converting debt owed to Nutmeg or one or another of its funds into stock, or entering into certain transactions.

We pause to highlight that, based on our review of the briefs, the plaintiffs do not challenge any aspect of the district court's rulings on the claims asserted against Barnes & Thornburg. Accordingly, this appeal proceeds only as to the plaintiffs' challenge to the district court's resolution of claims against Weiss as receiver. See *Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009) (declining to consider claims not adequately briefed).

As to those claims, we review the district court's grant of summary judgment *de novo*, construing all facts and drawing all reasonable inferences in the plaintiffs' favor as the non-moving party. See *Van den Bosch v. Raemisch*, 658 F.3d 778, 785 (7th Cir. 2011).

**A**

We begin with the plaintiffs' claims challenging Weiss's decisions to pursue or decline certain opportunities on behalf of Nutmeg. As the plaintiffs see it, Weiss breached her fiduciary duties by failing to pursue certain litigation and by failing to enforce certain judgments and promissory notes. The district court carefully considered and rejected this category of claims, and we see no error in its analysis. A few examples suffice to explain why.

Consider Count V. The plaintiffs alleged that Weiss breached her duties by failing to enforce a $2.7 million judgment held by a particular Nutmeg fund against an entity called RMD Entertainment Group. While the plaintiffs assert that Weiss made no effort to settle or collect the judgment, the district court saw the facts otherwise. Instead, the court explained, the evidence demonstrates that Weiss investigated the collectability of the judgment by contacting RMD and learning not only that Nutmeg's judgment may be defective, but also that RMD had no assets in the United States. But Weiss did not stop at RMD's word. She went further by consulting a collection agency, which confirmed that RMD was judgment proof. She then conveyed this information to the district court handling the SEC matter, explaining that she had contacted third parties to inquire about their interest in purchasing the judgment but was unable to find a buyer. The plaintiffs, although plainly disagreeing with Weiss's business judgment, did not show that this diligence never occurred. So, even when viewed in the light most favorable to the plaintiffs, the record shows that Weiss took steps to collect on this judgment and ultimately decided it was not worth pursuing. The district court was on sound footing concluding that no reasonable jury could find that Weiss willfully or even recklessly breached her fiduciary duties.

Similarly, in Count XI, the plaintiffs alleged that Weiss breached her fiduciary duties by failing to follow Goulding's advice and "d[oing] nothing" to monetize a defaulted convertible note issued by North Bay Resources. But here, too, we see the evidence much the same way as the district court. The record shows that Weiss contacted North Bay and explained that, based on Nutmeg's records, she believed the firm still owed on the note. North Bay disagreed, taking the position

that the note had been satisfied with shares issued to Nutmeg. In a sworn declaration, Weiss explained that, based on her due diligence, she made the decision not to expend further resources to pursue a claim against North Bay. An informed decision not to move forward with a particular course of action falls short of demonstrating a willful and deliberate (or, for that matter, a grossly negligent) violation of her duties.

We likewise agree with the district court that Count VII (the plaintiffs' third failure to enforce claim) and Counts X, XIV, and XVI (relating to lawsuits on behalf of the Funds) fail for the same reasons. In each instance, the evidence shows that Weiss investigated the potential claims or litigation opportunities, considered the strengths and weaknesses of available options, and weighed the costs of pursuing certain opportunities before exercising her business judgment. The plaintiffs, while vigorously disagreeing with Weiss's decisions, did not bring forth evidence to show that a jury could find that those decisions reflected a willful, deliberate, or grossly negligent breach of her fiduciary duties.

B

The plaintiffs also brought a series of claims (in Counts VI, VIII, and XVII) alleging that Weiss breached her duties by failing to convert debt owed to Nutmeg or to certain funds into stock to be sold on the open market. Here again, though, the district court got it right in concluding that the record evidence requires a contrary conclusion.

The plaintiffs allege three instances where, as they would have it, Weiss should have converted certain debt to stock and then liquidated the equity at a profit. For example, the plaintiffs contend that Weiss breached her duties by settling a

$50,000 note owed by an entity named GoIP Global, rather than exercising a right to convert the note to stock. Yet even if we credit the plaintiffs' view that it was both feasible and advantageous for Weiss to convert the GoIP debt and sell the stock, we agree with the district court that the plaintiffs' allegations, at most, support an inference that Weiss exercised poor judgment. But a poor business decision falls well short of demonstrating either a willful and deliberate or even a grossly negligent breach of her duties.

At a more specific level, the record shows that Weiss did convert some of the GoIP debt and tried to convert the remainder, only to find GoIP non-responsive. She then sought, received, and followed professional investment advice about what to do with the remaining debt. Even viewing the facts in the plaintiffs' strongest favor, we cannot conclude that Weiss came anywhere close to willfully, deliberately, or even negligently offending her fiduciary obligations: she retained—and sought guidance from—an investment advisory firm, and when faced with two choices, she chose the option advised by the firm. Absent from the record are facts showing that Weiss intended to harm the Funds by settling the GoIP debt rather than undertaking conversion and liquidation transactions. And the record shows the same level of diligence as to the facts underlying the allegations in Counts VIII and XVII.

## C

The plaintiffs also devote substantial attention to three specific claims against the receiver. Once again, though, the district court properly saw no genuine issue of material fact pertinent to these claims.

*First*, in Count IV, the plaintiffs allege that Weiss breached her fiduciary duties by failing to receive court approval to pay any fees exceeding a $150,000 cap imposed by the district court to Crowe Horwath, the accounting firm that advised her in the execution of her receivership responsibilities. While it is undisputed that Weiss incurred $168,000 in advisory fees beyond the cap, we agree with the district court that no reasonable jury could find that her doing so reflected an intentional breach of her fiduciary duties. The court handling the SEC matter appointed Crowe Horwath *before* Weiss became receiver and explicitly authorized her to continue using the firm. The record also shows that Crowe Horwath estimated its fees at $168,000 to complete its outstanding work. Weiss shared this information with the district court and kept the court informed of what Crowe Horwath was doing, why the work was needed, and how much it would cost. She also heeded the court's instruction to take a "conservative approach" by submitting payment requests in installments as Crowe performed its work. While it is clear that the plaintiffs believe Crowe Horwath's work was unnecessary, what is missing is evidence showing that Weiss's continued use of Crowe's services reflected a willful, deliberate, or grossly negligent flouting of the district court's directions or her fiduciary duties. Indeed, neither the district court overseeing the SEC matter nor the Commission itself took issue with Weiss's handling of the additional payments for Crowe Horwath's services.

*Second*, in Count IX, the plaintiffs allege that Weiss breached her fiduciary duties by terminating a transaction that would have enabled Inverso Corp., a corporate shell owned by several Nutmeg funds, to be used as a vehicle for an initial public offering. Notably, however, in the SEC's

motion to appoint Weiss as receiver, the Commission flagged the Inverso deal and directed Weiss to review it. Upon doing so Weiss chose to halt the transaction because it "reeked of a scam." In her sworn declarations, Weiss provided a detailed explanation of why she did not approve the transaction: she questioned its legitimacy and determined the business plan was implausible because, among other things, it projected Inverso would gain 5% of the global market share for multiple sclerosis treatment in just two years and 5% of global cancer treatment revenues in just four years with a budget of only a few million dollars. No evidence suggests Weiss formed these views on a whim or held them in willful or deliberate (or grossly negligent) disregard of her duties as receiver.

*Third*, Count XIX alleged that Weiss breached her fiduciary duties by expending attorneys' fees on a frivolous motion to show cause. In April 2010, in the SEC matter, Weiss filed a motion for an order to show cause against Goulding for his failure to cooperate with her. She pointed to 11 different instances of his noncooperation, one of which involved locating evidence of investor approval to modify the operating agreement for the Nutmeg/Mercury LLP Fund. As it turned out, however, Weiss already had the relevant documents in the files seized from Nutmeg. Goulding reacted to learning of this mistake by urging the district court in the SEC case to sanction Weiss. The district court denied the motion, explaining that there was "no evidence of an intentional fraud, concealment or conspiracy" on Weiss's part and because "there [was] no suggestion that all of the other issues raised in the [r]eceiver's motion also were without merit." We see no error with this conclusion.

**IV**

The plaintiffs' amended complaints and arguments on appeal are expansive. Based upon our review of the record and the parties' briefs, we have focused only on those claims that we believe warrant discussion. But our ultimate conclusion—that no reasonable jury could find that Weiss engaged in a willful, deliberate, or even grossly negligent breach of a fiduciary duty—applies with equal force to the totality of the plaintiffs' claims on appeal. For these reasons, we AFFIRM.