In the

# United States Court of Appeals
## For the Seventh Circuit

No. 20-1689

SECURITIES AND EXCHANGE COMMISSION,

*Plaintiff-Appellee,*

*v.*

RANDALL S. GOULDING,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 09-cv-1775 — **Jeffrey T. Gilbert**, *Magistrate Judge.*

ARGUED JANUARY 20, 2021 — DECIDED JULY 7, 2022

Before EASTERBROOK, WOOD, and BRENNAN, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. Randall Goulding has served
time in prison for mail fraud and tax fraud. See *United States
v. Goulding*, 26 F.3d 656 (7th Cir. 1994). Both state and federal
judges have found that he engaged in other shady dealings.
See, e.g., *Goulding v. United States*, 957 F.2d 1420 (7th Cir.
1992). But these convictions and findings did not deter people
from continuing to trust him with their money, which he
managed under the name Nutmeg Group. The Securities and

Exchange Commission charged in this suit under the Investment Advisers Act of 1940, 15 U.S.C. §§ 80b–1 to 80b–21, that Goulding ran Nutmeg through a pattern of fraud—including touting his supposed financial expertise while failing to tell investors about his crimes—in addition to violating many of the Act's technical rules.

Soon after the suit was filed, the district court issued an injunction removing Goulding from the business and appointing a receiver. The parties consented to a bench trial before a magistrate judge, who agreed with the SEC, enjoined Goulding from violating the securities laws, required him to disgorge $642,422 in ill-gotten gains (plus interest), and imposed a civil penalty of an additional $642,422, for a total award of $1,868,074. The findings of fact and conclusions of law are extensive; the magistrate judge summarizes them at 2020 U.S. Dist. LEXIS 52157 *13–19 (N.D. Ill. Mar. 25, 2020). See also *SEC v. Nutmeg Group, LLC*, 162 F. Supp. 3d 754 (N.D. Ill. 2016) (summary judgment in the SEC's favor on some issues); *Alonso v. Weiss*, 932 F.3d 995 (7th Cir. 2019) (resolving some of the litigation about Nutmeg Group in the wake of the receiver's appointment).

We recount a few of the court's findings to give the flavor of what happened. Goulding, an accountant and lawyer, formed Nutmeg to be an investment adviser. He also formed 15 funds that hired Nutmeg's advisory services. Nutmeg (which Goulding controlled) served as general partner of 13 funds. After investors put up money, the funds invested in illiquid securities, such as warrants and convertible bonds that had been issued by small firms that were close to insolvent or had been given going-concern warnings by their accountants. Goulding wrote all of the disclosure documents

that the funds used to raise money and made all of the investment decisions. Because the funds' investments were illiquid, they had to be valued by means other than market prices, and a considerable discount should have been applied under normal accounting standards. Goulding told investors that this would be done—but it wasn't. The funds were accordingly overvalued, and Goulding often announced increases in value without market evidence to support his pronouncements.

A complex structure such as Nutmeg, with illiquid investments and advisory fees tied to the value of the assets under management, needed independent legal counsel and independent accounting. But Goulding never hired an accountant for the funds (despite telling investors and the SEC that he had done so), and his own law firm provided Nutmeg and the funds with all of their legal advice. It gave bad advice. When the SEC began an audit in 2008, Goulding told the agency that he had never heard of the Investment Advisers Act, even though Nutmeg had been registered under that statute.

Another bit of advice that either an accountant or an independent lawyer would have provided was to maintain strict separation of accounts. That didn't happen. Having decided which fund should buy what assets, Nutmeg often held the securities in its own name—not on deposit with a broker (less than 10% was held that way) but in drawers at Goulding's law office or in the hands of third parties that lacked experience managing or safeguarding investments. As for cash: well, that was commingled in one account that held Goulding's personal money, the funds' money, and Nutmeg's money. The magistrate judge found that Goulding used this account as his "personal piggy bank" and paid all sorts of expenses from it, without regard to his legal entitlements. By the time the SEC

finished its audit in 2009, this account was empty and the relative entitlements of the funds to the illiquid securities was difficult to determine. The magistrate judge found that Goulding had drawn out at least $1.3 million more than his entitlement, though the restitution award was smaller (representing a conservative estimate of the excess in the five years before the SEC filed suit).

Nutmeg was entitled to fees based on the value of each investor's initial stake (a 4% load charge) plus monthly and yearly fees based in part on asset value and in part on any profits. Because Goulding valued the assets as he pleased, without an illiquidity discount, both the asset-based fees and the profit-based fees were overstated.

The conflict of interest was staggering: a single person was investment adviser (through Nutmeg), investment manager, controller of the funds under management, disclosure-writer, lawyer reviewing those disclosure documents, lawyer for all other purposes at both Nutmeg and each fund, accountant (to the extent that there was any accounting), and chief financial officer. The documents furnished to investors did not reveal the extent of this self-dealing, and as we've already mentioned the documents contained both fraudulent statements (such as a promise to discount illiquid assets) and fraudulent material omissions (such as a neglect to mention Goulding's convictions for fraud and the commingling that gave him access to as much of the money as he pleased). By the time a receiver took over in 2009, investors had lost millions of dollars (just how many millions is hard to know) out of the roughly $32 million entrusted to Nutmeg's 15 funds.

Many of the magistrate judge's findings rest on Goulding's concessions. In this court he principally disputes the

findings that particular assets were overvalued, which meant that Nutmeg's fees were excessive. Yet the judge's findings, far from being clearly erroneous, see Fed. R. Civ. P. 52(a)(6); *Anderson v. Bessemer City*, 470 U.S. 564 (1985); are supported by extensive evidence. Goulding asks us to make findings independent of the district court's—that is, to engage in what is often called de novo review—but that request is preposterous. We do not have authority to depart from Rule 52(a)(6). That some of the findings might be called mixed questions of law and fact does not matter. As the Supreme Court explained in *U.S. Bank N.A. v. Village at Lakeridge, LLC*, 138 S. Ct. 960 (2018), case-specific mixed findings are reviewed deferentially. That description fits the findings after this bench trial. More: even if we were to review the record without deference, we would reach the same conclusions as the magistrate judge.

Goulding invokes *Liu v. SEC*, 140 S. Ct. 1936 (2020), in support of an argument that the maximum award of restitution is zero. *Liu* holds that restitution is a permissible remedy in litigation filed by the SEC but that the amount must be limited to the wrongdoer's net take, rather than his gross proceeds, unless the source of the funds was a scam from top to bottom. (Nutmeg does not fit that proviso; its funds had real assets, if risky and hard-to-value ones.) The magistrate judge made his restitution award before *Liu*, but it is not necessary to remand for a do-over. The judge found that the restitution award is a conservative estimate of the amount by which Goulding's withdrawals exceeded his contractual entitlements during the five years before the SEC sued. That is the definition of net unjustified proceeds.

Trying to attack this award, Goulding insists that the magistrate judge underestimated his contractual entitlement to

cash by finding that the funds' assets, and thus Nutmeg's recurring fees, had been overvalued. (Goulding *was* Nutmeg, so its fees were his property, or close enough to this for current purposes.) We have already explained why the magistrate judge's findings on this score are not clearly erroneous.

The commingling of assets is another obstacle to the success of Goulding's argument. If there was a problem in determining the restitution award, it comes from the combination of two things: uncertainty about how much Nutmeg should have received in fees, and determining the ownership of the money in the commingled account. Goulding asserts that more than $400,000 came from his own assets and was his to withdraw, but the magistrate judge found that his total capital contribution was only $70,000. That finding, too, is not clearly erroneous. (It is also not clear to us how Goulding could have withdrawn his capital contribution, whether $70,000 or $400,000, while investors in the funds were unable to do so, given the assets' illiquidity.)

The extent of Goulding's wrongdoing makes it hard to determine his net unjustified withdrawals, and as the wrongdoer he bears the consequence of uncertainty. We do not see any legal error in the magistrate judge's conclusion that the restitution reflects a conservative estimate of Goulding's ill-got gains. Nor did the judge err by declining to trace funds from their source to Goulding's pocket. One Justice argued for such a requirement in *Liu*, but he wrote in dissent. 140 S. Ct. at 1953–54 (Thomas, J., dissenting).

The magistrate judge adjusted for his conservative award of restitution by imposing a penalty. The Act provides authority for him to proceed as he did. The judge selected what the Act calls a third-tier penalty, 15 U.S.C. §80b–9(e)(2)(C), which

may be the greater of $130,000 or the *gross* amount of the wrongdoer's pecuniary gain. The magistrate judge used this clause to double what had been calculated as Goulding's net wrongful withdrawal. Basing the penalty on the net extraction was favorable to Goulding—and this also means that, if the restitution award was off in some manner, the judge still had substantial discretion under §80b–9(e)(2)(C) to make up for any difference by basing the penalty on Goulding's gross withdrawals. Neither the penalty, nor the restitution and penalty in combination, can be upset on this appeal as an abuse of discretion—which is the standard of appellate review. See *SEC v. Williky*, 942 F.3d 389, 393 (7th Cir. 2019).

One more subject and we are done. The magistrate judge entered an injunction that requires Goulding to obey the law. The injunction has several sections, implementing different sections of the Act. We set out one provision as an illustration:

> IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendant Goulding is permanently restrained and enjoined from violating, directly or indirectly, Sections 206(1) and (2) of the Advisers Act [15 U.S.C. §§ 80b-6(1) and 80b-6(2)] by, while acting as an investment adviser and by the use of the means and instrumentalities of interstate commerce and of the mails, employing devices, schemes, and artifices to defraud his clients and prospective clients, or engaging in transactions, practices, and courses of business which operate as a fraud or deceit upon his clients or prospective clients.

Goulding contends that federal judges should not issue injunctions that simply repeat a statute, for injunctions of this kind mean that any further dispute between Goulding and the SEC will be resolved by a judge using the contempt power, or perhaps by the agency in administrative proceedings, rather than by a jury under the norms of ordinary

litigation. Even a scoundrel is entitled to a jury trial when there are disputed issues of material fact.

We held in *Power v. Summers*, 226 F.3d 815 (7th Cir. 2000), that obey-the-law injunctions are not forbidden. But they still may amount to an abuse of discretion, and this one does so. Instead of repeating the statutory language, the judge could and should have forbidden with greater specificity what Goulding must not do. We remand for this purpose.

Goulding may not like the upshot of his request for that relief. One common remedy in securities-fraud cases is a fencing-out injunction—for example, telling the offender that he must never again have anything to do with investment management on behalf of persons other than his immediate relatives. See, e.g., *SEC v. Cherif*, 933 F.2d 403 (7th Cir. 1991) (prohibition on future trading); *SEC v. Koenig*, 557 F.3d 736 (7th Cir. 2009) (bar on serving as director or top manager of a public company); *SEC v. Patel*, 61 F.3d 137 (2d Cir. 1995) (same). Given Goulding's history of securities and tax fraud, such an injunction would have distinct benefits. The choice belongs to the magistrate judge. We mention the fencing-out possibility only to make clear to Goulding that he cannot complain if, on remand, things go from bad to worse.

The finding of liability and all of the financial awards are affirmed. The injunction is vacated, and the case is remanded for further proceedings consistent with this opinion.